**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 14 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHRIS DAVIS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1107-CR-619 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49F09-1103-FD-21351

**March 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Chris Davis (Davis), appeals his conviction for escape, a Class D Felony, Ind. Code § 35-44-3-5; refusal to identify, a Class C misdemeanor, I.C. § 34-28-5-3.5; and operating a vehicle having never received a license, a Class C misdemeanor, I.C. § 9-24-18-1.

We affirm.

## ISSUE

Davis raises one issue on appeal, which we restate as: Whether the trial court's replaying of a witness's testimony to the jury constituted fundamental error.

## FACTS AND PROCEDURAL HISTORY

On February 3, 2011, Davis began home detention with the Marion County Community Corrections with Case Manager Heidi Turk (Turk) as his supervisor. Turk's office is located on Market Street in downtown Indianapolis. Davis was subject to numerous rules while on home detention, including the requirement that Davis be confined to his home at all times unless Turk, Turk's supervisor, or other staff from Community Corrections expressly approved otherwise. In the event that someone other than Turk authorized Davis to leave home detention, Turk would be notified.

Turk authorized Davis to go to and from work. On March 25, 2011, Davis faxed Turk his time sheet to verify his employment and later called Turk to confirm that she had received it. Turk had reviewed Davis's time sheet and told Davis it was insufficient.

2

She informed Davis that he no longer had permission to leave home detention until further notice. Turk filed a home detention violation against Davis with the trial court at 7:11 p.m. that evening.

On March 28, 2011, Indianapolis Metropolitan Police Officer Keith Minch (Officer Minch) spotted a vehicle with its rear window tint too dark to see the occupants inside. Officer Minch stopped the vehicle and approached Davis, the driver of the vehicle. Davis first identified himself as someone else and Officer Minch, unable to confirm Davis's proffered identity, pressed Davis for further identification. Davis relented, providing his real name and birth date. Davis also told Officer Minch that he was traveling to Shelby Street in Indianapolis. After confirming that he did not have a driver's license, Officer Minch arrested Davis. Officer Minch found that Davis was wearing an ankle bracelet and later confirmed that Davis was on home detention.

On March 29, 2011, the State filed an Information charging Davis with Count I, escape, a Class D Felony, I.C. § 35-44-3-5; Count II, refusal to identify, a Class C misdemeanor, I.C. § 34-28-5-3.5; and Count III, operating a vehicle having never received a license, a Class C misdemeanor, I.C. § 9-24-18-1.

On June 1, 2011, a jury trial was held. Two witnesses, Turk and Officer Minch, testified for the State. Davis also testified. Further, Davis stipulated that he was on home detention on March 28, 2011 and that he operated a motor vehicle without ever receiving a license. During its deliberations, the jury sent two questions to the trial court. Although the questions do not appear in the record, the jury apparently requested a

transcript of Turk's testimony. In front of the State and Davis' counsel, the trial court proposed that the jury be refused a written transcript of Turk's testimony, but instead offered to bring the jury back into court to listen to an audio recording of Turk's entire testimony. Both the State and Davis' counsel assented. The jury returned to the court room to listen to Turk's testimony in its entirety, then returned to its deliberations. The jury found Davis guilty of Counts I and III, but acquitted Davis of Count II. On June 21, 2011, the trial court sentenced Davis to an aggregate of two years at the Department of Correction.

## DISCUSSION AND DECISION

Davis alleges that the trial court abused its discretion by permitting the jury to replay an audio recording of Turk's testimony. We review the trial court's decision to permit the jury to rehear evidence for an abuse of discretion. *Parks v. State*, 921 N.E.2d 826, 831 (Ind. Ct. App. 2010), *trans. denied*.

Davis acknowledges that his counsel failed to object to the trial court's decision to permit rehearing of Turk's testimony. Failure to object to a trial court's action results in waiver of the issue for appellate review unless such action constitutes fundamental error. *Merritt v. State*, 822 N.E.2d 642, 643 (Ind. Ct. App. 2005). "Fundamental error is an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Clark v. State*, 915 N.E.2d 126, 130 (Ind. 2009). "An appellate court receiving contentions of fundamental error need only expound upon those it thinks

4

warrant relief. It is otherwise adequate to note that the claim has not been preserved." *Id.* at 131–32.

The parties acknowledge that the reasons why the jury requested a transcript do not appear in the record. We note that Indiana Jury Rule 28 permits the trial court, in a criminal case and in the presence of counsel, to "inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process" if the jurors are at an impasse. Similarly, I.C. § 34-36-1-6 permits the jury, after retiring for deliberation and in the event of either (1) a "disagreement among the jurors as to any part of the testimony or (2) a desire "to be informed as to point of law arising in the case," to be brought back into court and receive the information required, provided the same occurs "in the presence of, or after notice to, the parties" or their counsel. *See Parks*, 921 N.E.2d at 831. Here, the parties point to no specific disagreement or express desire among the jury as to any particular point. In any event, we note that the trial court is afforded both flexibility and discretion under either Ind. Jury Rule 28 or I.C. § 34-36-1-6. *See Gant v. State*, 825 N.E.2d 874, 876 (Ind. Ct. App. 2005); *Parks*, 921 N.E.2d at 831.

Davis argues that because Turk's testimony "went to the heart of the escape charge," replaying an audio recording of her testimony deprived Davis of a fair trial. (Appellant's Br. p. 5). The elements constituting the crime of escape, under these particular circumstances, are: (1) a knowing or intentional violation (2) of a home detention order. I.C. § 35-44-3-5(b). At trial, Davis and the State stipulated to the fact that Davis was under home detention and both Turk's testimony and evidence in the form

of written regulations proved the content of Davis' home detention order. Thus, the matter at issue here concerned Davis' knowing or intentional violation of his home detention order. By allowing the jury to rehear Turk's testimony, Davis alleges that the trial court "prevented jurors from properly assessing Turk's credibility" and "inappropriately focused the jury's attention on the content of the audio tape, giving the State an advantage by highlighting Turk's statement and de-emphasizing the importance of Davis' contradictory testimony." (Appellant's Br. p. 7).

Davis cites to precedent from our supreme court which found that replaying witness testimony to the jury constituted error. *Shaffer v. State*, 449 N.E.2d 1074 (Ind. 1983). In *Shaffer*, the trial court replayed audio recordings of four witnesses' testimony to the jury. *Id*. at 1075. "Apart from the evidence establishing the [*corpus delecti*] of the [m]urder," the evidence against Shaffer consisted of the witnesses' testimony. *Id*. Recordings of the first three of those witnesses' testimonies lasted three and one-half hours. *Id*. The supreme court held that the trial court abused its discretion by replaying the witnesses' testimonies because it constituted "a virtually complete replay of the trial" and "consisted entirely of witnesses who contradicted one another." *Id*. Here, Davis likens his situation to *Shaffer*, insofar as evidence of Davis' knowing and intentional violation of his home detention order consisted exclusively of contradictory witness testimony.

*Shaffer* was distinguished in *Madison v. State*, where the supreme court found no error when the trial court replayed a witness's testimony. *Madison v. State*, 534 N.E.2d

6

702, 705 (Ind. 1989). Madison claimed, among other things, that replaying witness testimony resulted in "undue emphasis" on the witness's testimony, which was presumably adverse to Madison. *Id.* In distinguishing *Shaffer*, the supreme court noted:

> [in this] case, the testimony replayed consisted of approximately thirty pages of the transcript and cannot be compared in volume to that replayed in *Shaffer*. Also, the significance of the conflicting testimony in appellant's case was not as great as that in *Shaffer*. We find no abuse of trial court discretion in replaying [the witness's] testimony upon the jury's request.

*Id.*

Here, we find the similarities to *Madison* persuasive. Turk's testimony constituted thirty-six pages of the trial transcript. The jury was presented with the testimony of only two witnesses, Turk and Davis, on the issue of Davis' knowing and intentional violation of a home detention order. In essence, the jury merely had to decide whether Turk instructed Davis to report to her office on the day in question. Thus, we cannot say that the significance of such conflicting testimony was great.

Moreover, Davis' attempt to establish a causal connection between the replaying of Turk's testimony and the jury's determination that Davis knowingly violated his home detention order overlooks the possibility that the jury attached equal significance to Davis' credibility, which it discounted. Officer Minch testified that Davis informed him that he was traveling to Shelby Street on March 28, 2011, yet Davis testified that although he may have mentioned Shelby Street, he did not tell Officer Minch that he was going there. In sum, we cannot say that replaying Turk's testimony deprived Davis of a

7

fair trial. Accordingly, the replaying of Turk's testimony did not constitute fundamental error.

CONCLUSION

Based on the foregoing, we find that the trial court's replaying of witness testimony to the jury did not constitute fundamental error.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur